## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| RICHARD LANPHER, | Civil No. 14-2560 (JRT/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT MOTIONS** |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

Mark M. Nolan, **NOLAN THOMPSON & LEIGHTON**, 5001 American Boulevard West, Suite 595, Bloomington, MN  55437, for plaintiff.

Molly R. Hamilton Cawley and Terrance J. Wagener, **MESSERLI & KRAMER P.A.**, 100 South Fifth Street, Suite 1400, Minneapolis, MN 55402, for defendant.

This is a disability benefits action brought by Richard Lanpher against Unum Life Insurance Company ("Unum").  Lanpher obtained a private disability insurance policy ("the Policy" or "the Unum Policy") through Unum in 1994 and first claimed benefits under the Policy in May 2008, approximately six months after he was forced to leave his job at Merrill Lynch due to severe depression.  Unum paid Lanpher residual disability benefits at a rate of 50% from May 1, 2007 to October 1, 2007, and full disability benefits from October 1, 2007 to June 23, 2008.  Lanpher requested a recalculation of benefits dating back to 2002, which Unum denied.  Lanpher now seeks full contract benefits from 2002 to the present, plus interest.  This matter is before the Court on the parties' cross motions for summary judgment.  The Court concludes that the Unum Policy is not an employee welfare benefit plan under the Employee Retirement Income Security Act of

1974 ("ERISA").  Because the Court finds that Lanpher failed to provide a timely notice of claim between 2002 and 2007, the Court will grant in part Unum's motion for summary judgment.  The Court will deny Lanpher's motion for partial summary judgment.

## BACKGROUND

### I. LANPHER'S MEDICAL HISTORY

Richard Lanpher was a financial advisor for Merrill Lynch from 1983 through December 2007.  (Aff. of Mark M. Nolan ("Nolan Aff."), Ex. D (Summ. J. Log ("Partial Admin. R.")) at 0111,[1] Feb. 2, 2015, Docket No. 28; Aff. of Richard Lanpher ("Lanpher Aff.") ¶ 2, Feb. 2, 2015, Docket No. 29.)  In 1987, Lanpher began seeing Dr. James J. D'Aurora, Ph.D./L.P., for depression.  (Partial Admin. R. at 4089, 4093.)  Dr. D'Aurora continued to handle Lanpher's care for many years, and in 2001, he concluded that Lanpher appeared to move into a clinical depression, for which Lanpher sought medication.  (*Id.* at 4089.)  Lanpher's treating physician prescribed antidepressants beginning in November 2001.  (Supplemental Aff. of Richard Lanpher ("Supplemental Lanpher Aff.") ¶ 3, Feb. 2, 2015, Docket No. 30.)

Lanpher's depression interfered with his ability to work and function in the course of performing daily activities.  (*Id.* ¶ 2.)  "By 2004, [Lanpher] had so much trouble just getting out of bed that [he] would work from home, and was put on probation at Merrill Lynch twice for absenteeism."  (*Id.*)  In late 2004, Lanpher observed that his medication

---

[1] The Court will cite to the Administrative Record using the bates pagination.  Because the first eighteen digits of each page number are identical (UA-CL-NL4230196-00), in the interest of brevity the Court will use only the digits that appear after the shared eighteen digits.  For example, "UA-CL-NL4230196-000111" will be cited as "0111."

was no longer working and sought further treatment.  (Partial Admin. R. at 4089.) Eventually, Dr. D'Aurora determined that Lanpher had major depression, which led to him "experiencing the 'rapid cycling' and mania of the bi polar disorder." (*Id.*)

In 2007, Lanpher's depression reached a point where he was no longer capable of working.  He took a leave of absence from Merrill Lynch and was terminated on December 17, 2007.  (*Id.* at 0111, 0442-0443.)  At that time, Lanpher had both a basic long-term disability benefits plan and a supplemental long-term disability benefits plan through his employment with Merrill Lynch.  (Lanpher Aff. ¶ 3.)  After his employment with Merrill Lynch ended, Lanpher sought disability benefits through both of those plans. *Lanpher v. Met. Life Ins. Co.*, 50 F. Supp. 3d 1122 (D. Minn. 2014).

## II. THE UNUM INSURANCE POLICY

In addition to the basic and supplemental long-term disability benefit plans, Lanpher also separately purchased a private disability insurance policy through Unum in 1994.  (Partial Admin. R. at 0064-0073.)  The Unum Policy is the subject of this action. A Unum representative visited Merrill Lynch to promote the Policy in 1994.  (Lanpher Aff. ¶ 7.)  The goal of Unum's presentation was to encourage Merrill Lynch's financial advisors to recommend the policy to their clients.  (*Id.*)  Lanpher decided after the presentation that he was interested in purchasing the policy for himself.  (*Id.*)  Unum's presenter informed him that if two or more employees purchased policies through Unum, Unum would offer them a group discount.  (*Id.*)  Subsequently, Lanpher and two other Merrill Lynch employees purchased the Policy from Unum.  (*Id.*; *see also* Aff. of Richard Fairbanks ("Fairbanks Aff.") ¶ 5, Feb. 2, 2015, Docket No. 31.)

Although the Policy was a private insurance plan, Merrill Lynch orchestrated some aspects of the Policy's administration. For example, Merrill Lynch facilitated the employees' premium payments, in exchange for which Unum offered the three employees a 15% discount on their premiums through a FlexBill benefit arrangement. (Aff. of Linda M. Doyle ("Doyle Aff."), Ex. A at 3, Dec. 12, 2014, Docket No. 18.) The FlexBill account for Lanpher and his two co-workers who purchased the Policy was entitled "Merrill Lynch Life," (Aff. of Lisa M. Fagan ("Fagan Aff."), Ex. A (excerpts from Unum's FlexBill file for Merrill Lynch Life's Special Bill #34870G1) at 4-5, Dec. 12, 2014, Docket No. 19), and the arrangement was that "the bills for the entire flexbill group" were all sent to Merrill Lynch, (*id.* at 3). Merrill Lynch passed the bills on to the employees, and each individual employee paid his own premium directly to Unum. (Lanpher Aff. ¶¶ 9, 11; Fairbanks Aff. ¶ 8.) Under the 15% FlexBill discount, Lanpher paid an annual premium of $3,897.72 for the duration of the relevant time period. (Doyle Aff., Ex. A at 3.)

In March 2008, approximately three months after his termination from Merrill Lynch, Lanpher was hospitalized at the Mayo Clinic for depression. (*See, e.g.*, Partial Admin R. at 0487, 1523.) Shortly after that point, in May 2008, he sought long-term disability benefits under the Unum Policy. (*Id.* at 0111-0113.) On the claim form, Lanpher listed December 17, 2007 as his last day worked, but he indicated that his depression began in 2002. (*Id.* at 0113.) He also explained that he had reduced his work hours prior to his termination as a result of his depression. (*Id.* at 0111.) Lanpher did not, however, make a residual or total benefits claim prior to May 21, 2008.

Along with his claim form, Lanpher submitted medical records from Dr. D'Aurora and Dr. Kim, (*id.* at 4093), as well as from the Mayo Clinic and Dr. Robert Roddy, a psychiatrist Lanpher began seeing in 2005, (*id.* at 0486-0487, 1523). Based on Lanpher's claim and medical documentation, Unum's initial review concluded that Lanpher's date of disability was March 25, 2008. (*Id.* at 0498.) Pursuant to this determination, they sent Lanpher a check for $15,200.00 on August 26, 2008. (*Id.* at 3982.)

On December 3, 2008, Unum informed Lanpher that they had revised their initial review after receiving additional information from Dr. D'Aurora. Based on the revised date of disability, Unum concluded that Lanpher was "residually disabled from May 1, 2007 to October 1, 2007 and totally disabled from October 1, 2007 to present." (*Id.*) In November 2008, Unum sent Lanpher a check for $7,853.33, representing the residual disability benefits, and another check for $66,900.26, representing his total disability benefits under the revised disability determination. (*Id.* at 3983.) Additionally, Unum paid Lanpher $21,000 through the College Benefit Rider for Lanpher's three children. (*Id.* at 3984.)

Just over three years later, on December 28, 2011, Lanpher contacted Unum to request that they recalculate his benefits to reflect an earlier date of disability. (Doyle Aff., Ex. A at 23-24.) At that time, Lanpher asserted that he was entitled to residual benefits from 1999 to 2001, and total disability benefits from 2001 to the present. (*Id.* at 23.) Unum responded on March 23, 2012 that they had not received any new medical information since they last adjusted his date of disability on December 3, 2008. (*Id.* at 26.) The letter from Unum observes that they received correspondence from Dr.

D'Aurora dated January 19, 2011, which reiterated his earlier position that Lanpher began suffering debilitating symptoms in 2004 but did not provide any new information. (*Id.*) Without new information supporting a recalculation, Unum informed Lanpher that they would not reassess his benefits. (*Id.* at 27.) The letter advised Lanpher that, if he did not agree with the decision, he "must submit a written appeal," which "must be received by [Unum] within 180 days of the date [Lanpher] receive[d] this letter even if [he] submitted additional information to [the disability benefits specialist] for reconsideration." (*Id.*) The letter ends by explaining, "If we do not receive your written appeal within 180 days of the date you receive this letter, our claim determination will be final." (*Id.* at 29.)

On May 3, 2013 – well after the 180 appeal window had expired – Lanpher sent Unum a fax "requesting reconsideration of [its] March 23, 2012 denial letter for individual disability benefits prior to May[] 1, 2007." (*Id.* at 30.) Unum responded that Lanpher's case had been closed due to the expiration of the appeal period. (*Id.* at 34-35.) The letter explained that Lanpher's "late notice and filing of claim has prejudiced [Unum's] ability to evaluate [Lanpher's] claim back to 1999 or 2002." (*Id.* at 34.) The letter further explained that although Unum's claim determination was final, Lanpher had "a right to bring a civil suit under section 502(a) of the Employee Retirement Income Security Act of 1974" if he disagreed with Unum's decision. (*Id.* at 35.)

On April 21, 2014, Unum received a letter from Lanpher's attorney, Mark Nolan, requesting an appeal review on the grounds that Dr. D'Aurora's communication with Unum in late November 2012 constituted an appeal of the March 23, 2012 determination.

(*Id.* at 38.) Unum denied Nolan's appeal review request, explaining that Dr. D'Aurora's November 2012 communication was insufficient to constitute an appeal by Lanpher for two reasons. First, Dr. D'Aurora was solely clarifying an earlier discussion from 2008 and not purporting to offer any new information. (*Id.*) Second, even if his communication had constituted a notice of appeal, it was received in late November – roughly eight months after the March 23 determination – and was therefore outside the 180-day appeal window. (*Id.*)

## III.  PROCEDURAL HISTORY

On July 1, 2014, Lanpher filed this action. (Compl., July 1, 2014, Docket No. 1.) At that time, the Court had taken summary judgment motions under advisement in Lanpher's action against Merrill Lynch and MetLife for benefits under the basic and supplemental long-term disability insurance plans. In his complaint against Unum, Lanpher alleges that Unum "has wrongfully and in breach of its insuring contract, denied benefits due Mr. Lanpher under the [Policy]." (*Id.* ¶ 8.) Lanpher goes on to claim that "the denial of the Plaintiff's claim by the Defendant lacked reasonable basis and Defendant acted in reckless disregard of Plaintiff's rights in denying Plaintiff's claim." (*Id.* ¶ 9.) He seeks "[f]ull contract benefits from 2002 to the present and continuing," along with "[i]nterest on said benefits." (*Id.* at 2.)

On December 12, 2014, Unum moved for summary judgment. (Def.'s Mot. for Summ. J., Dec. 12, 2014, Docket No. 15.) Unum argues that Lanpher's claim is time-barred and that he is not entitled to additional benefits under the Policy because his notice of claim, proof of loss, and notice of appeal were all untimely. In response, Lanpher filed

a motion for partial summary judgment on February 2, 2015, seeking a ruling that his claim was timely and not governed by ERISA, as well as a finding that Unum was not prejudiced by any delay in submitting a notice of claim. (Pl.'s Mot. for Partial Summ. J., Feb. 2, 2015, Docket No. 25.) This matter is now before the Court on both motions for summary judgment.

## DISCUSSION

### I.  STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport*

*v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

## II.   EMPLOYEE WELFARE BENEFIT PLANS UNDER ERISA

Unum argues that the Policy is an employee welfare benefit plan governed by ERISA. In *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982), the Eleventh Circuit identified four key factors courts apply to determine whether ERISA governs a policy: "a 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain [1] the intended benefits, [2] a class of beneficiaries, [3] the source of financing, and [4] procedures for receiving benefits." 688 F.2d at 1373. The Eighth Circuit has embraced the *Donovan* factors for determining whether an insurance policy constitutes a plan under ERISA. *E.g.*, *Nw. Airlines, Inc. v. Fed. Ins. Co.*, 32 F.3d 349, 354 (8th Cir. 1994); *Harris v. Ark. Book Co.*, 794 F.2d 358, 360 (8th Cir. 1986).

Each of the *Donovan* factors is clearly ascertainable here. As to the first, a reasonable person would be able to ascertain that the intended benefit under the Policy is long-term disability coverage. As to the second, the intended beneficiaries of the Policy are the Merrill Lynch employees that are policyholders. As to the third, the source of financing is the employees' premium payments; Merrill Lynch paid no part of the employees' contributions to the Policy. As to the fourth, the Policy clearly details the procedures for receiving benefits.

Despite the fact that the *Donovan* factors are met here, there is little tying Merrill Lynch to the Policy. The *Donovan* factors are designed to evaluate whether a benefit

scheme constitutes "an employee benefit plan, fund or program" as those terms are used in ERISA, but the satisfaction of the four-factor test does not mean that a plan, fund, or program is necessarily **established or maintained** by an employer. Rather, "[t]he existence of a plan is [one] prerequisite to jurisdiction under ERISA." *Harris*, 794 F.2d at 360. "An employer's decision to extend benefits does not constitute, in and of itself, the establishment of an ERISA plan." *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 256 (8th Cir. 1994). The Court must also consider whether an employer conducts activities that constitute the establishment or maintenance of an employee welfare benefit plan.

When assessing whether a plan falls within the jurisdiction of ERISA, "[t]he pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits. Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme." *Id.* at 257. Where an employer has no "'ongoing administrative program to meet [its] obligation'" under a policy, ERISA does not govern the plan. *Eide v. Grey Fox Tech. Servs. Corp.*, 329 F.3d 600, 605 (8th Cir. 2003) (quoting *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 12 (1987)). The Court looks, for example, to considerations such as "an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria." *Kulinski*, 21 F.3d at 257; *see also Plante v. Foster Klima & Co., LLC*, No. 03-3553, 2004 WL 2222318, at *5 (D. Minn. Sept. 30, 2004) (finding no ERISA plan where an employer's

actions involved no discretion and no separate administrative scheme was required to support the employer's fulfillment of their obligations). It is these "types of discretionary decisions, such as evaluating eligibility criteria or determining benefit levels, that are indications of a true ERISA plan." *Wright Elec., Inc. v. Minn. State Bd. of Elec.*, No. 00-1457, 2002 WL 511453, at *5 (D. Minn. Mar. 31, 2002).

In this case, nothing suggests that Merrill Lynch maintained a separate administrative scheme or exercised discretion over eligibility or benefits levels for the Unum Policy. Merrill Lynch did not invite Unum to offer a policy to employees or even conduct a presentation about the Unum Policy. Unum requested the opportunity to make a presentation about the Policy so that Merrill Lynch employees could inform clients about the Policy, and Merrill Lynch acquiesced. Merrill Lynch does not appear to have played any role in the Policy application process, as the employees submitted their applications directly to Unum. Nor did Merrill Lynch have any control over the employees' benefit levels.

Unum argues that the FlexBill system required administrative action by Merrill Lynch, but there is no evidence that the FlexBill arrangement required Merrill Lynch to exercise discretion over any aspect of the Policy. Merrill Lynch merely received the bills from Unum, to which Unum had already applied a 15% discount, and then passed the premium bills on directly to the employees without taking any other administrative actions. Indeed, after one of the other employees in the FlexBill group requested that Unum send his premium bills directly to his home, Unum sent a letter explaining that the bills for the whole FlexBill group must go to a single address, but the address need not be

Merrill Lynch's business address if one of the employees preferred to receive all of the bills. (Fagan Aff., Ex. A at 3.) Nothing in the record indicates that Merrill Lynch undertook any financial obligations with respect to the Policy, received any material benefit from Unum for facilitating premium bills, or engaged in any practices beyond automatic forwarding of bills immediately to employees. Such limited involvement "hardly constitutes the operation of a benefit plan" by Merrill Lynch. *Fort Halifax*, 482 U.S. at 12.

Unum urges the Court to follow *Johnston v. Paul Revere Life Insurance Co.*, 241 F.3d 623 (8th Cir. 2001), and find the establishment of an ERISA plan where the employer's only role was facilitating premium payments for which the employees were ultimately charged. In *Johnston*, as in this case, the employer arranged for insurance agents to meet with employees and explain the terms of the plan. *Id.* at 626. Unlike this case, the employees in *Johnston* had the option for the insurer to bill the employees directly or to bill the employer, and the plaintiff chose to have the employer billed for the premiums. *Id.* The employer then passed the full cost on to the employees at the end of the tax year by adding the total individual premiums to the employees' W-2 forms. *Id.* In both *Johnston* and this case, the plaintiffs were personally responsible for the cost of the premiums. Based on the arrangement in *Johnston*, the court found "that a reasonable person could conclude that [the employer] did establish a plan within the meaning of ERISA that offered disability benefits to its employees." *Id.* at 629.

There are, however, important differences between this case and *Johnston* that help illustrate why the Unum Policy is not an ERISA plan. From the beginning, the

employer's involvement in the plan differs between the two cases.  In this case, Unum contacted Merrill Lynch, and Merrill Lynch agreed to allow a Unum representative to give a presentation – not for the employees' own benefit, but with the aim of encouraging Merrill Lynch's financial planners to advise clients to sign up for the Unum Policy.  In *Johnston*, on the other hand, the employer sought a new long term disability insurance provider for its employees and reached out to an insurance agent for Paul Revere.  *Id.* at 626.  After employees signed up for the policy in *Johnston*, the employer was much more active than Merrill Lynch, working with the insurance agent to handle policy paperwork and instituting a policy whereby the employer would pay premiums up front and then adjust the employees' tax forms to account for those costs.  *Id.*  The court reasoned that "by maintaining the policy forms, by processing the paperwork in conjunction with [the insurance agent], and by facilitating the payment of premiums, the plan embodied a set of administrative practices."  *Id.*  Merrill Lynch was far less involved in the administration of the Unum Policy, and the Court concludes that its activities did not reach the threshold of establishing or maintaining an ERISA employee welfare benefit plan.

### III.     LIMITATIONS PERIOD

Because the Unum Policy is not governed by ERISA, the Court will treat the Policy as a traditional disability insurance policy.  Long term disability insurance policies are governed by Chapter 62A of the Minnesota Statutes.  *Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 866 (8th Cir. 2011).  Under Minnesota law, "[n]o action at law or in equity . . . shall be brought after the expiration of three years after the time written proof

of loss is required to be furnished." Minn. Stat. § 62A.04, subd. 2(11). The statute establishes the proof of loss requirements as follows:

> Written proof of loss must be furnished to the insurer . . . in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within 90 days after the termination of the period for which the insurer is liable and in case of claim for any other loss within 90 days after the date of such loss.

Minn Stat. § 62A.04, subd. 2(7). This comports with the Unum Policy, which requires that "(Proof of Loss) must be furnished to us within 90 days after each month for which a benefit is payable." (Doyle Aff., Ex. A at 7.)

Although the documentation in the record is somewhat sparse with respect to whether Lanpher's disability remains ongoing for the purposes of disability insurance coverage, the Court finds that there is sufficient evidence that Lanpher's depression has continued within the last three years. (*E.g.*, Partial Admin. R. at 4089 ("My experience of Mr. Lanpher was that he was not able to work and function . . . as early as 2001, definitely in 2004 and since then.").) Therefore, the Court concludes that Lanpher's continuous disability remains ongoing and his action is not barred by the statute of limitations in Minnesota Statute § 62A.04.

IV.    NOTICE OF CLAIMS

Even though Lanpher's federal action is not precluded by the Minnesota statutory limitation period, the Court concludes that Lanpher's breach of contract claim is barred in part for failure to comply with the Policy's notice requirements. Under Minnesota law, "[l]ate notice defeats coverage only if there is prejudice to the insurer or notice is actually a condition precedent to coverage." *Winthrop & Weinstine, P.A. v. Travelers Cas. & Sur.*

*Co.*, 187 F.3d 871, 874 (8th Cir. 1999). The burden of demonstrating prejudice is on the insurer. *Id.* (citing *Reliance Ins. Co. v. St. Paul Ins. Cos.*, 239 N.W.2d 922, 925 (Minn. 1976)). "However, an 'extraordinary length of time between an event and notification [can] be prejudicial in itself.'" *Roth v. Nw. Mut. Life Ins. Co.*, No. 12-452, 2014 WL 1281603, at *4 (D. Minn. Mar. 28, 2014) (quoting *Reliance Ins. Co.*, 239 N.W.2d at 925).

In *Roth*, the court found a delay of six and one-half years to be prejudicial to the insurer. *Id.* Other courts have similarly found a delay of several years to be prejudicial because it prevents the insurer from "undertak[ing] any contemporaneous investigation to determine the extent of [the insured]'s disability." *Id.* For example, in *Dawson v. Northwestern Mutual Life Insurance Co.*, No. 10-2641, 2011 WL 4842543 (D. Minn. Oct. 12, 2011), the court found that a delay of seven years barred the insured's untimely claim. The court rejected the plaintiff's argument that the delay was not prejudicial because his medical records were fully available to the insurer and the insurer could still require a medical examination or depose the plaintiff about his medical condition. *Id.* at *2-*3. The court was persuaded that the insurer's "inability to conduct a contemporaneous claim investigation or to interview [the insured] and other witnesses when their memories were fresh" constituted prejudice. *Id.* at *3 (internal quotation marks omitted); *accord Broughton v. Unum Life Ins. Co. of Am.*, No. 06-4015, 2007 WL 39432, at *6 (D.S.D. Jan. 5, 2007) (precluding as untimely a disability insurance claim when filed more than three years after notice was required by the policy).

In this case, the Unum Policy required that an insured must provide Unum with "Notice of Claim within 30 days after the Elimination Period begins, or as soon as

reasonably possible." (Doyle Aff., Ex. A at 7.) "'Elimination Period' means the number of days stated on page 3 [90 days] preceding the date benefits become payable . . . during which you are totally or residually disabled. **The Elimination Period begins on the first day that you are totally or residually disabled**." (*Id.* at 4 (emphasis added).) Lanpher alleges that he became disabled in 2002, but he did not provide Unum with any notice of claim until May of 2008. (Partial Admin. R. at 0111-0112.) Even if Lanpher's disability did not begin until the end of 2002, his notice of claim and proof of loss were filed more than five years after he alleges that his disability began and notice was due under the Policy. Just as in *Dawson*, Lanpher has offered no reason for the delay in filing his claim. Lanpher's medical records are available to Unum, as are Lanpher's co-workers and Lanpher himself, just as they were in *Dawson* and in *Roth*. The Court finds, however, just as in *Dawson* and in *Roth*, that Unum's inability to perform a contemporaneous investigation of Lanpher's claims from 2002 to 2007 was prejudicial to the insurer.[2]

Each case must be evaluated on its merits with respect to whether a delay in filing a benefits claim was prejudicial. *Ryan v. ITT Life Ins. Corp.*, 450 N.W.2d 126, 130 (Minn. 1990); *Roth*, 2014 WL 1281603, at *4. In this case, the Court concludes that a

---

[2] Lanpher argues that the notice and proof of loss provisions are not properly understood to be "conditions precedent" to recovery under the Policy. Irrespective of whether those are "conditions precedent" as a matter of contract law, Lanpher had an obligation to put Unum on notice of his disability within a reasonable time of the disability's onset. The Court is not holding Lanpher to a strict timeline of the thirty days required by the Policy, but the timing of his notice must be reasonable, and a delay of five years inhibits the insurer's ability to investigate the claims. Therefore, even assuming without deciding that these notice and proof of loss provisions were not "conditions precedent" to coverage, Lanpher's claims between 2002 and 2007 are barred for failure to provide timely notice of the claims, as the multiple-year delay was prejudicial to Unum.

delay of more than five years prejudiced the insurer's ability to conduct a contemporaneous and thorough investigation of Lanpher's claim between 2002 and 2007. Therefore, the Court will grant in part Unum's motion for summary judgment, as to Lanpher's disability claims prior to May 1, 2007.[3] This does not affect Lanpher's ability to pursue disability claims arising after he provided notice to Unum in May 2008; after that point, Unum was aware of Lanpher's disability and had the means to conduct a contemporaneous investigation of those claims.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Unum's Motion for Summary Judgment [Docket No. 15] is **GRANTED in part** and **DENIED in part** as follows:

    a. Unum's motion is **GRANTED** with respect to any claims arising prior to May 1, 2007.

    b. Unum's motion is **DENIED** with respect to any claims arising on or after May 1, 2007.

2. Lanpher's Motion for Partial Summary Judgment [Docket No. 25] is **DENIED**.

DATED: September 2, 2015  
at Minneapolis, Minnesota.

                                                                                   s/ John R. Tunheim  
                                                                                JOHN R. TUNHEIM  
                                                                                    Chief Judge  
                                                              United States District Court

---

[3] May 1, 2007 was the earliest date for which Unum was able to confirm a disability determination, based upon their investigation of Lanpher's May 2008 claim.